UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NABIL SAMAAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CENLAR FSB, et al.,<br><br>Defendants. | No. 2:20-cv-01887-TLN-JDP<br><br><br><br>**ORDER** |

This matter is before the Court on Defendant Cenlar FSB's[1] ("Defendant") Motion to Dismiss. (ECF No. 24.) Plaintiffs Nabil Samaan ("Samaan") and Jason Arinno ("Arinno") (collectively, "Plaintiffs")[2] filed an opposition. (ECF No. 42.) Defendant replied. (ECF No. 53.) For the reasons set forth below, the Court GRANTS Defendant's motion.

///

///

---

[1] This action was initially brought against Defendants Cenlar FSB, Eagle Home Mortgage, LLC, Nationstar Mortgage, LLC d/b/a Mr. Cooper, Wells Fargo Bank, NA ("Wells Fargo"), Freedom Mortgage Corporation, Lakeview Loan Servicing, LLC ("Lakeview"), Loan Care, LLC ("Loan Care") (collectively, "Defendants"). As it stands, Defendant Cenlar FSB is the sole remaining Defendant.

[2] This action was initially also brought by Plaintiff Matthew Obregon ("Obregon"). However, for the reasons discussed below, Obregon is no longer a party to this action.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[3]

Samaan owns several residential investment properties that are serviced by various mortgage lending companies, including Defendant. (ECF No. 1-1 at 5.) Arinno occupies a principal residence that is similarly serviced by Defendant. (*Id.*) Shortly after the Coronavirus Aid, Relief, and Economic Security Act ("CARES") was signed into law in March 2020, Plaintiffs sought information from Defendant to request forbearances of their loan payments. (*See id.* at 6–10.) Defendant allegedly told Plaintiffs they could only obtain an initial and subsequent ninety-day forbearance instead of a 180-day forbearance as permitted under the CARES Act. (*Id.*) Though Samaan successfully obtained a forbearance agreement (*id.* at 20), Arinno alleges he was deterred from obtaining a forbearance agreement, as he was informed payment would be due in full upon the expiration of the forbearance (*id.* at 9–10).

On June 30, 2020, Plaintiffs filed a complaint in the Sacramento County Superior Court alleging seven causes of action against Defendants. (ECF No. 1-1 at 9–33.) Defendants subsequently removed the action to this Court on September 21, 2020. On September 28, 2020, Defendant moved to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure ("Rule" or "Rules") 12(b)(6). (ECF No. 24.)

## II.   STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every

---

[3] The following recitation of facts is taken, sometimes verbatim, from Plaintiffs' Complaint. (ECF No. 1-1.)

2

reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678. Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355, F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

If a complaint fails to state a plausible claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could

3

1  not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th

2  Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

3        **III.**    **ANALYSIS**

4        As an initial matter, the Court notes Obregon has not alleged that Defendant serviced his

5  mortgage or that he interacted in any way with Defendant. (*See* ECF No. 1-1.) Obregon alleges

6  his loan was serviced by Lakeview and Loan Care. (*Id.* at 5.) However, Lakeview and Loan

7  Care have been terminated from this action. (ECF No. 62.) Further, Plaintiffs state Obregon has

8  "informally settle[d] his claims" and is "voluntarily dismissing his action against all named

9  defendants." (ECF No. 42 at 5.) Obregon did not file an opposition to the instant motion.

10 Therefore, the Court DISMISSES Obregon from this action with prejudice.

11       In the instant motion, Defendant moves to dismiss all seven of Plaintiffs' claims. (ECF

12 No. 24 at 6.) The Court will address each claim in turn.

13             **A.**    <u>Claim One: CARES Act</u>

14       Plaintiffs' first cause of action is an alleged violation of the CARES Act. (ECF No. 1-1 at

15 9.) Plaintiffs allege Defendant misrepresented that Plaintiffs are solely entitled to a 90-day

16 forbearance, contradicting the "up to" 180-day forbearance provided by the CARES Act. (*Id.* at

17 9–10.) Further, Plaintiffs allege Defendant misrepresented that all forborne payments would be

18 due at the expiration of the forbearance. (*Id.* at 9.) Defendant moves to dismiss the claim on the

19 basis that the CARES Act contains no private cause of action. (ECF No. 24 at 8–9.)

20       Courts across the Ninth Circuit have concluded there is no private right of action under

21 the CARES Act. *See, e.g.*, *Lewis v. IRS*, No. 1:21-cv-01653-JLT-EPG, 2022 WL 378657, at *3

22 n.3 (E.D. Cal. Feb. 8, 2022); *Lopez v. Bank of Am., N.A.*, 505 F. Supp. 3d 961, 974 (N.D. Cal.

23 2020); *Am. Video Duplicating, Inc. v. City Nat'l Bank*, No. 2:20-cv-04036-JFW-JPR, 2020 WL

24 6882735, at *4–5 (C.D. Cal. Nov. 20, 2020); *Horvath v. JP Morgan Chase & Co.*, No. 3:21-cv-

25 1665-BTM-AGS, 2022 WL 80474, at *5 (S.D. Cal. Jan. 7, 2022). The Court joins the many

26 district courts unanimously finding there is no express or implied private cause of action under

27 the CARES Act. Therefore, Plaintiffs' CARES Act claim is DISMISSED.

28 ///

1              B.      Claim Two: Fraud

2       Plaintiffs allege Defendant misrepresented that Plaintiffs are solely entitled to a 90-day forbearance, contradicting the "up to 180 day" forbearance provided by the CARES Act. (ECF No. 1-1 at 15.) Further, Plaintiffs allege Defendant misrepresented that all forborne payments would be due at the expiration of forbearance. (*Id.* at 15–16.) Defendant moves to dismiss the fraud claim because: (1) Plaintiffs' allegations do not meet Rule 9(b)'s heightened particularity standard; (2) Arinno's[4] alleged misrepresentation was not a misrepresentation; and (3) Samaan did not justifiably rely on Defendant's alleged misrepresentation. (ECF No. 24 at 9–12.)

        Under California law, the elements of a fraud claim are: (1) a false representation; (2) knowledge of its falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damages. *See Vess v. Ciba—Geigy Corp., USA*, 317 F. 3d 1097, 1105 (9th Cir. 2003) (quoting *Moore v. Brewster*, 96 F. 3d 1240, 1245 (9th Cir. 1996)). "Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995); *Manderville v. PCG & S Group, Inc.*, 146 Cal. App. 4th 1486, 1498 (2007). Whether reliance on a representation is "justifiable" or "reasonable" is determined in light of the plaintiff's own knowledge and experience. *See Alliance*, 10 Cal. 4th at 1240.

        Additionally, fraud claims are subject to the heightened pleading standard as required by Rule 9(b). Fed. R. Civ. P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F. 3d 1120, 1125 (9th Cir. 2009). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

        Here, Plaintiffs have satisfied the particularity requirement of Rule 9(b). Plaintiffs allege Defendant (the "who") misrepresented the length of the forbearance (the "what") in identifiable written and oral communications (the "how") in or around March 2020 (the "when") by phone,

---

[4]     Importantly, Defendant does not argue Samaan's alleged misrepresentation is not a misrepresentation.

5

1   internet, and mail (the "where"). (ECF No. 1-1 at 15–16); *see Vess*, 317 F. 3d at 1106 (quoting
2   *Cooper v. Pickett*, 137 F. 3d 616, 627 (9th Cir. 1997)).

3   However, Arinno has not sufficiently pleaded a misrepresentation. Arinno alleges
4   Defendant induced Arinno to not request a forbearance by misrepresenting that all forborne
5   payments would be due at the expiration of the forbearance. (ECF No. 1-1 at 15–16.) Despite
6   Arinno's contention, this is not a misrepresentation and is indeed permissible under the CARES
7   Act. *See* Pub. L. 116-136 § 4022 (nothing in the CARES Act bars a loan servicer from requiring
8   repayment in full at the end of the forbearance period). Thus, without a false representation,
9   Arinno has failed to state a claim upon which relief can be granted.

10  Further, Samaan has failed to sufficiently plead justifiable reliance on Defendant's
11  purported misrepresentation. Samaan concedes he received a forbearance. (ECF No. 1-1 at 20.)
12  Accordingly, there are no facts that Defendant induced Samaan to change his position.
13  Defendant's purported misrepresentation is irrelevant if Samaan never changed his position in
14  reliance on it. *See Kruse v. Bank of Am.*, 202 Cal. App. 3d 38, 62–63 (1988) ("In order to uphold
15  the verdict on the grounds of fraud, it must be shown by the evidence that the plaintiff changed
16  her position in justified reliance on the fraudulent misrepresentation resulting in damage.") (citing
17  Cal. Civ. Code § 1709). Indeed, the complaint contains no facts explaining what Samaan would
18  have done differently had he not relied on Defendant's alleged false statement. *See Deschaine v.*
19  *IndyMac Mortg. Servs.*, No. CIV. 2:13-1991 WBS CKD, 2014 WL 281112, at *4–5 (E.D. Cal.
20  Jan. 23, 2014), *aff'd*, 617 F. App'x 690 (9th Cir. 2015) (dismissing the claim when the plaintiff
21  "alleged no facts demonstrating that he changed his position in reliance on [the defendant's]
22  alleged misrepresentations; on the contrary, plaintiff repeatedly alleges that he '*continued* [his]
23  attempts to obtain a loan modification'") (emphasis in original). Without justifiable reliance,
24  Samaan has failed to state a claim upon which relief can be granted.

25  Therefore, although Plaintiffs satisfied Rule 9(b), Plaintiffs have failed to state a claim
26  upon which relief can be granted. Accordingly, Plaintiffs' fraud claim is DISMISSED.
27  ///
28  ///

1         C.    Claim Three: Intentional Infliction of Emotional Distress ("IIED")

2        Defendant moves to dismiss Plaintiffs' IIED claim on the basis that the complaint fails to allege Defendant engaged in "extreme and outrageous conduct." (ECF No. 24 at 12.) Plaintiffs oppose, arguing Defendant's conduct is "extreme and outrageous" considering the events took place during the onset of the COVID-19 pandemic. (ECF No. 42 at 15.)

        Under California jurisprudence, the elements of an intentional infliction of emotional distress claim are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). To be sufficiently extreme and outrageous conduct, the actions "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998).

        Here, Defendant's alleged conduct does not constitute extreme and outrageous behavior. Though there was and continues to be a global pandemic, an alleged misrepresentation regarding the length of a forbearance is not "so extreme as to exceed all bounds of that usually tolerated by civilized community." *Cochran*, 65 Cal. App. 4th at 494; *see also Coyotzi v. Countrywide Fin. Corp.*, No. CV F 09-1036 LJO SMS, 2009 WL 2985497, at *9 (E.D. Cal. Sept. 16, 2009) ("[T]he attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress. Frequently, the creditor intentionally seeks to create concern and worry in the mind of the debtor in order to induce payment. Such conduct is only outrageous if it goes beyond all reasonable bounds of decency.") (citations and quotations omitted). Indeed, the language of the CARES Act requires servicers to grant a forbearance of "*up to* 180 days." Pub. L. 116-136 § 4022 (emphasis added). Thus, the statute does not preclude a servicer from granting an initial 90-day forbearance and subsequently determining if a further forbearance is required. *See id.* Conduct that comports with the law certainly cannot be extreme nor outrageous. *Trerice v. Blue Cross of Cal.*, 209 Cal. App. 3d 878 (1989) (finding a defendant "cannot be subject to liability for infliction of emotional distress when it has merely pursued its own economic interests and

asserted its legal rights"); *Shumake v. Caliber Home Loans, Inc.*, No. CV16-4296-CAS(AGRX), 2017 WL 1362681, at *11 (C.D. Cal. Jan. 6, 2017) (dismissing an intentional infliction of emotional distress claim with prejudice and finding the "defendants' alleged failure to provide a loan modification package cannot constitute extreme and outrageous conduct"). Therefore, Plaintiffs have failed to state a claim upon which relief can be granted.

Accordingly, Plaintiffs' claim is DISMISSED.

D. Claims Four and Five: Negligence and Negligent Infliction of Emotional Distress ("NIED")

Defendant moves to dismiss Plaintiffs' negligence and NIED claims on the grounds that Defendant did not owe Plaintiffs a duty of care. (ECF No. 24 at 13.) Plaintiffs oppose, arguing the contrary and citing the *Biakanja* factors as support for their contention. (ECF No. 42 at 17–19) (citing *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958).)

In California, the elements of a negligence claim are: (1) the existence of a duty to exercise due care; (2) breach of that duty; (3) causation; and (4) damages. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001). Similarly, for a NIED claim, "[t]he traditional elements of duty, breach of duty, causation, and damages apply." *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989) (citations omitted).

The question of whether a duty of care exists is a question of law to be determined on a case-by-case basis. *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013). The general rule is that "a financial institution owes no duty of care to a borrower when the institution[']s involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Ass'n.*, 231 Cal. App. 3d 1089, 1096 (1991). Despite the general rule, due to a split among California courts, this rule has been recently clarified by the California Supreme Court. *See Sheen v. Wells Fargo Bank, N.A.*, No. S258019, 2022 WL 664722, at *1 (Cal. Mar. 7, 2022) (holding the economic loss rule barred the plaintiff's negligence claim and the defendant owed no duty of care to the plaintiff).

In the instant matter, Defendant did not owe Plaintiffs a duty of care. As the California Supreme Court recently stated, "the handling of a loan modification application is within the

1    scope of [the defendant's] role as a lender." *Sheen*, 2022 WL 664722, at *10.  Further, contrary

2    to Plaintiffs' contention, the *Sheen* court held the *Biakanja* factors only apply "when the plaintiff

3    is a 'third person not in privity' with the defendant[,]" which is certainly not the situation in the

4    present matter. *Sheen*, 2022 WL 664722, at *15 (quoting *Biakanja*, 49 Cal. 2d 647 at 650).  Thus,

5    the general rule from *Nymark* governs, meaning Defendant did not owe Plaintiffs a duty of care.

6          Therefore, absent a duty of care, Plaintiffs have failed to state a claim upon which relief

7    can be granted.  Accordingly, Plaintiffs' negligence and NIED claims are DISMISSED.

8                     E.      <u>Claim Six: California's Unfair Competition Law ("UCL")</u>

9          Defendant moves to dismiss Plaintiffs' UCL claim on the grounds that: (1) Plaintiffs'

10   claim is derivative of their fraud claim; (2) Plaintiffs have failed to meet the requirements of Rule

11   9(b); (3) Plaintiffs have no available remedy; and (4) the Fair Credit Reporting Act ("FCRA")

12   preempts the UCL.  (ECF No. 24 at 14.)

13         To bring a UCL claim, "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent

14   business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" *Lippitt v.*

15   *Raymond James Fin. Servs., Inc.*, 340 F. 3d 1033, 1043 (9th Cir. 2003) (citing Cal. Bus. & Prof.

16   Code § 17200).  To plead a violation of the "unlawful" prong, a plaintiff must plead a violation of

17   another statute or common law.  *Shumake*, 2017 WL 1362681 at *8.  To plead a violation of the

18   "unfair" prong, a plaintiff must allege a business practice that "'offends an established public

19   policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to

20   consumers.'" *McDonald v. Coldwell Banker*, 543 F. 3d 498, 506 (9th Cir. 2008) (quoting *People*

21   *v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984)).  To allege a

22   violation of the "fraudulent" prong, "it is only necessary to show that members of the public are

23   likely to be deceived." *Buller v. Sutter Health*, 160 Cal. App. 4th 981 (2008) (quoting *Schnall v.*

24   *Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000)); *see also Bradach v. Pharmavite, LLC.*, 735

25   Fed. App'x. 251, 254 (9th Cir. 2018) ("UCL actions are not required to prove their individual

26   reliance on the allegedly misleading statements.  Instead, the standard . . . is whether members of

27   the public are likely to be deceived.") (internal citations and quotations omitted).  However, "[t]he

28   UCL, while broad in scope, is limited in remedies.  Private individuals . . . may win restitution or

injunctive relief, but they cannot obtain damages or attorney fees." *De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 993 (2018) (citations omitted).

Here, to the extent Plaintiffs plead a violation of the "unlawful" prong, as previously discussed, Defendant has not violated the CARES Act.  Samaan further points to a violation of the FCRA, however this also fails, as the UCL is preempted by the FCRA.[5]  *See Miller v. Bank of Am., Nat. Ass'n*, 858 F. Supp. 2d 1118, 1124 (S.D. Cal. 2012) (finding the FCRA precludes "all state common law and statutory claims, to effect Congress' intent to limit a plaintiff's recovery against furnishers of credit information to only the remedies provided under the FCRA"); *Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143, 1150 (N.D. Cal. 2010) ("Since the UCL would impose an independent requirement or prohibition on furnishers of information to [credit reporting agencies], it is preempted by the FCRA.") (citing *Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139, 1143–44 (N.D.Cal.2005)); *Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1181–82 (E.D. Cal. 2005) (dismissing the plaintiff's UCL claim because it was preempted by the FCRA). Thus, Plaintiffs have not alleged a viable claim under the "unlawful" prong.

To the extent Plaintiffs plead a violation of the "unfair" or "fraud" prongs, Plaintiffs' claim is derivative of their fraud claim.  As already discussed, Plaintiffs have failed to allege sufficient factual support of fraud (and that members of the public are likely to be deceived, given Plaintiffs failed to plead an actual misrepresentation) and thus have not alleged a viable claim under the "unfair" nor "fraud" prongs of the UCL. *Yeboah v. Wilmington Tr., N.A.*, 845 F. App'x 573, 574 (9th Cir. 2021) (affirming the district court's dismissal of a UCL claim when the claim was predicated on a failed foreclosure claim) (citing *Krantz v. BT Visual Images, LLC*, 89 Cal. App. 4th 164, 178 (2001)).

Additionally, Plaintiffs do not allege they made any payments to Defendant that should be returned, thus there is no basis for awarding restitution. *See In re Tobacco Cases II*, 240 Cal. App. 4th 779, 795 (2015) ("Restitution under . . . [§] 17203 is confined to restoration of any interest in money or property, real or personal, which may have been *acquired* by means of such

---

[5]     Plaintiffs notably do not plead a standalone claim for a violation the FCRA.

unfair competition. A restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other.") (quoting *Zhang v. Superior Ct.*, 57 Cal. 4th 364, 371 (2013)) (emphasis in original). To the extent Plaintiffs are requesting the Court enjoin Defendant's denial of a 180-day forbearance, there is also no basis for such an award, as Plaintiffs' allegations do not point to any violation of the law and their purported injuries would easily be remedied through ordinary money damages. *See Durkee v. Ford Motor Co.*, No. C 14-0617 PJH, 2014 WL 4352184, at *3 (N.D. Cal. Sept. 2, 2014) ("Because the UCL provides for only equitable remedies, and plaintiffs have an adequate remedy at law for the alleged Song–Beverly Act violation, plaintiff's UCL claim must be dismissed.") (citing *Rynes v. Striker*, No. 10-5619 SC, 2011 WL 2149095 at *3 (N.D. Cal. May 31, 2011)). As such, Plaintiffs have no viable remedy.

Accordingly, Plaintiffs' UCL claim is DISMISSED.

### F. Claim Seven: Racketeer Influenced and Corrupt Organizations Act ("RICO")

Though it is difficult to decipher from the complaint, as Plaintiffs cite and conflate subsections (a)–(d) of 18 U.S.C. § 1962, Plaintiffs seem to allege a violation of RICO under § 1962(c). (ECF No 1-1 at 28.) Under § 1962(c), a plaintiff must show the defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's business or property. 18 U.S.C. § 1962; *see Grimmett v. Brown*, 75 F. 3d 506, 510 (9th Cir. 1996) (citations omitted). In its motion to dismiss, Defendant argues Plaintiffs have not sufficiently alleged (1) conduct (2) of an enterprise, nor (3) racketeering activity. (ECF No. 24 at 15; ECF No. 14 at 10–12.) The Court will address each disputed element in turn.

#### i. Conduct

To satisfy the "conduct" element of a § 1962(c) RICO claim, a plaintiff must allege the defendant had "some part in directing [the enterprise's] affairs." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)) (internal quotation marks omitted). Simply being "part" of the enterprise or "performing services" for the

1  enterprise does not rise to the level of direction required.  *Id.*

2  Here, the complaint is devoid of any allegations Defendant played any role in directing the purported enterprise's affairs.  The extent of Defendant's alleged conduct is misrepresentations about the length of Plaintiffs' forbearance and that forborne payments will be due immediately upon expiration of the forbearance.  (ECF No. 1-1 at 29.)  Indeed, there are no allegations Defendant asserted any control or direction over the purported enterprise.  *See Walter*, 538 F. 3d at 1249 (finding considerations to whether this element is met include whether the defendant "occup[ies] a position in the chain of command . . . through which the affairs of the enterprise are conducted," whether it "knowingly implement[ed] [the] decisions of upper management," and whether its "participation was vital to the mission's success") (citations and internal quotation marks omitted).  At best, Plaintiffs have alleged Defendant merely played a part in the purported enterprise.  *See Baumer v. Pachl*, 8 F.3d 1341, 1345 (9th Cir. 1993) (quoting *Univ. of Md. at Balt., et al. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993)) ("[S]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.").  Thus, the conduct element is not met.

                *ii.*    *Enterprise*

RICO defines "enterprise" as: "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  "To plead an association-in-fact enterprise, a plaintiff must allege: (1) a common purpose of engaging in a course of conduct; (2) an ongoing organization, either formal or informal; and (3) facts that the associates function as a continuing unit."  *Odom v. Microsoft Corp.*, 486 F. 3d 541, 553 (9th Cir. 2007) (citation omitted).

Here, the complaint alleges Defendants had a common purpose of defrauding Plaintiffs.  (ECF No. 1-1 at 32.)  However, the factual support for such claim is merely a dispute about the length of forbearance agreements.  (*Id.* at 29.); *see In re Jamster Mktg. Litig.*, No. 05CV0819 JM (CAB), 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (finding RICO claims were not sufficiently pleaded when, after the plaintiff's legal conclusions were set aside, all that remained was "conduct consistent with ordinary business conduct and an ordinary business purpose"); *see*

*also Gomez v. Guthy–Renker, LLC*, No. EDCV 14-01425 JGB (KKx), 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015) (finding a routine contract for services did not constitute a distinct enterprise); *but see Odom*, 486 F.3d at 543 (finding a common purpose was adequately plead when the complaint alleged specific facts describing the fraudulent means used to carry out the scheme). To survive a motion to dismiss, a claim under RICO requires more. *See LD v. United Behavioral Health*, No. 4:20-cv-02254 YGR, 2020 WL 5074195, at *8 (N.D. Cal. Aug. 26, 2020) ("Courts routinely hold that the 'common purpose' requirement is not met where, as here, the allegations in the complaint are consistent only with the execution of a routine contract or commercial dealing."); *see also Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) ("Simply characterizing routine commercial dealing as a RICO enterprise is not enough.").

Additionally, the complaint alleges no factual support demonstrating Defendant is working with the other Defendants as part of a "continuing unit." *See Doan v. Singh*, 617 Fed. App'x. 684, 686 (9th Cir. 2015) (finding the plaintiffs failed to adequately allege a RICO enterprise when the complaint was "not clear what exactly each individual did, when they did it, or how they functioned together as a continuing unit"). Indeed, the complaint demonstrates the opposite: whereas Wells Fargo and Defendant granted Samaan a forbearance agreement, (ECF No. 1-1 at 20), Defendant purportedly induced Arinno to not request a forbearance at all (*id.* at 22). *See Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1089 (N.D. Cal. 2013) (dismissing the claim because there were no factual allegations showing the enterprise members "*associated together* with [the d]efendants *for* that alleged common purpose") (emphasis in original). Rather than showing an enterprise exists among Defendants, the complaint illustrates each Defendant was tending to its own affairs in different ways. *See Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1175–76 (E.D. Cal. 2017). Therefore, the enterprise element is not satisfied.

### iii. Racketeering Activity (Predicate Acts)

Plaintiffs allege Defendant "used the U.S. mail system, internet system and/or telephone system to send threatening and/or otherwise false communications and false demands for the purposes of intimidation, coercion and extortion against Plaintiff." (ECF No 1-1 at 30.) Plaintiffs

13

1  further allege "Defendants have engaged in conduct constituting a pattern of racketeering activity

2  . . . including, . . . 18 U.S.C. [§] 1341 (relating to mail fraud), [§] 1343 (relating to wire fraud),

3  [§] 1344 (relating to financial institution fraud), [§] 1951 (relating to interference with commerce,

4  robbery, or extortion), and [§] 1951 (relating to racketeering)." (ECF No 1-1 at 32.) This alleged

5  course of conduct was purportedly aimed to "defraud" Plaintiffs. *Id.* Defendant argues Plaintiffs

6  have not pleaded any factual basis for their allegations. (ECF No. 24 at 15.)

7  Racketeering activity (or a predicate act) is any act "indictable under several provisions of

8  Title 18 of the United States Code, and includes the predicate acts of mail fraud, wire fraud and

9  obstruction of justice." *Sanford v. MemberWorks, Inc.*, 625 F. 3d 550, 557 (9th Cir. 2010) (citing

10  *Turner v. Cook*, 362 F. 3d 1219, 1229 (9th Cir. 2004)); *see* 18 U.S.C. § 1961(1).

11  Here, Plaintiffs' conclusory attempt to plead a racketeering activity is unsupported by any

12  factual allegation. (ECF No 1-1 at 30, 32.) That is, the complaint alleges predicate acts but fails

13  to provide any factual basis of the predicate acts. *See id.*; *Comm. to Protect our Agric. Water*,

14  235 F. Supp. 3d at 1178 (finding allegations such as "[the defendant] utiliz[ed] mail and wire

15  fraud to deprive Californians of compliance with the [Safe Drinking Water Act]" and "[the

16  defendant] sent fraudulent communications via mail and electronic wires" were insufficient, thus

17  holding "[g]iven the complete absence of supporting factual allegations, plaintiffs cannot be said

18  to have plausibly alleged predicate offenses"). Because Plaintiffs have failed to sufficiently

19  allege a concrete instance of racketeering activity, Plaintiffs have failed to allege a pattern of such

20  activity. *See Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 782 (9th Cir. 2002).

21  Further, the pleading requirements of Rule 9(b) apply to the alleged predicate acts, which

22  are grounded in fraud. *See Edwards v. Marin Park, Inc.*, 356 F. 3d 1058, 1065–66 (9th Cir. 2004)

23  (stating Rule 9(b) "applies to civil RICO fraud claims") (citing *Alan Neuman Prods., Inc. v.*

24  *Albright*, 862 F. 2d 1388, 1392 (9th Cir. 1989)). As above, though Plaintiffs conclude Defendant

25  engaged in predicate acts, Plaintiffs fail to allege with any particularity the "'the who, what,

26  when, where, and how' of the misconduct charged." *Vess*, 317 F. 3d at 1106 (quoting *Cooper*,

27  137 F. 3d at 627); *Ferrari v. Mercedes-Benz USA, LLC*, No. 15-cv-04379-YGR, 2016 WL

28  7188030, at *2 (N.D. Cal. Dec. 12, 2016) ("The alleged predicate acts here are mail and wire

fraud. Such acts must be [plead] with particularity as to the time, place, content of, and parties to the fraudulent communications in order to allege the predicate acts of mail or wire fraud."). Additionally, Plaintiffs lump all Defendants together instead of "attribut[ing] specific conduct to individual defendants." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *Schreiber Distributing Co. v. Serv–Well Furniture Co., Inc.*, 806 F. 2d 1393, 1399–1400 (9th Cir. 1986) (allegations of mail fraud under §§ 1962(a)–1962(c) "must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme"). Accordingly, Plaintiffs do not allege any degree of particularity that would allow Defendant to prepare a defense. *Kearns*, 567 F. 3d at 1124 ("Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong") (internal quotations and citations omitted).

Therefore, Plaintiffs have not adequately pleaded racketeering activity. As Plaintiffs have failed to meet their burden on the above three elements, Plaintiffs' RICO claim is DISMISSED.[6]

### G. Leave to Amend

The Court has serious doubts about Plaintiffs' ability to adequately plead their claims in an amended complaint. However, because Plaintiffs have not yet filed an amended complaint in federal court and based on the liberal standard in favor of granting leave to amend, the Court will give Plaintiffs an opportunity to amend. *Lopez*, 203 F.3d at 1130. The sole exception is Plaintiffs' CARES Act claim (Claim One). The Court will not grant leave to amend this claim because the CARES Act does not provide for a private right of action and amendment would therefore be futile.

---

[6] To the extent the complaint alludes to a violation of § 1962(d), such a claim also fails. (*See* ECF No. 1-1 at 28.) Section 1962(d) provides, "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." As discussed above, since Plaintiffs have failed to state a claim under subsections (a), (b), or (c), any claim under subsection (d) similarly fails. *See Howard v. Am. Online Inc.*, 208 F. 3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.").

### IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Dismiss (ECF No. 24) as follows:

1. The Court DISMISSES Obregon with prejudice;
2. The Court DISMISSES Claim One without leave to amend; and
3. The Court DISMISSES Plaintiffs' remaining claims with leave to amend.

Plaintiffs are hereby granted thirty (30) days from the electronic filing date of this Order to file an amended complaint. Defendant shall file a response to the amended complaint within twenty-one (21) days from the electronic filing date of the amended complaint.

IT IS SO ORDERED.

DATED: March 21, 2022

Troy L. Nunley
United States District Judge